(18 App. Div. 83.)

### PENFIELD et al. v. VILLAGE OF NEW ROCHELLE et al.

(Supreme Court, Appellate Division, Second Department. May 11, 1897.)

1. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE—EVIDENCE.

The rule requiring clear proof of mutual mistake to authorize reformation of a deed does not make it necessary to call as witnesses all the trustees of the village to which the deed sought to be reformed was made, where only one of the trustees had any knowledge of the matter, but the testimony of that one is sufficient.

2. SAME—EFFECT OF READING DEED.

·. The right to reformation of a deed because of mutual mistake is not affected by the fact that the parties read the deed, if they actually were mistaken as to the description.

3. SAME—RIGHTS OF SUBSEQUENT GRANTEES.

A deed of land to a village for street purposes by mutual mistake incorrectly described the premises, and the street was laid out in accordance with such description. Afterwards the grantor sold a parcel of land to one B., who conveyed part of it to C., both deeds being with reference to the street as laid out. At the time of the conveyance to C. a diagram was shown him representing the street as the grantor intended it to be laid out. He began to build with reference to the street as shown on the diagram, but afterwards altered his plans with reference to the street as laid out. When told that he had not bought where he was building, he said that he knew it, but was advised that he could claim there, and he continued to build, though he was told that an action had been brought to reform the deed to the village. *Held*, that reformation of the deed to the village would not be denied because C.'s successor in interest would be affected thereby.

Appeal from special term, Westchester county.

Action by James T. Penfield and others, as executors of the will of George J. Penfield, deceased, against the village of New Rochelle and others, to reform a deed. There was a judgment in favor of plaintiffs, and defendant the New Rochelle Coal & Lumber Company appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

J. A. Young, for appellant.
Isaac N. Mills, for respondents Penfield.
Henry W. Taft, for respondent New York, N. H. & H. R. Co.

WILLARD BARTLETT, J. The judgment in this action directs the reformation of a deed dated July 12, 1886, whereby the late George J. Penfield conveyed to the trustees of the village of New Rochelle certain property which he desired to dedicate to public uses as a highway. From this judgment the village has not appealed. The only appellant is the New Rochelle Coal & Lumber Company, which has succeeded to the interest of James P. Canty, the original defendant in the suit, who claimed to be a bona fide purchaser, for value, of land which would be taken from him if the deed were reformed, without having had any notice of the alleged mistake in the description of the highway in the conveyance. The position of Canty and his successor is that equity cannot interfere to grant relief in such a case, where the judgment will injuriously affect the bona fide purchaser for valuable consideration, without notice. Kerr, Fraud & M. 436; Casler v. Sitts, 6 Hun, 659. They also insist—and, of

course, they are entitled to take advantage of this point, if it be a good one—that there was not sufficient evidence of mutual mistake, even as against the village, to warrant the rendition of the judgment under review. At the time of the conveyance, Mr. Penfield was the owner of a piece of land which lay between the New York, New Haven & Hartford Railroad, on the north, and Huguenot street, in the village of New Rochelle, on the south. The piece was almost square, and was bounded on the west by land belonging to one Moulton, and on the east by land formerly belonging to one Sherwood. Before making any deed to the trustees, Mr. Penfield opened a street 50 feet wide, leading through the middle of his property, from Huguenot street to the railroad. This street ran nearly, but not quite, at right angles with Huguenot street. Subsequently a number of residents and taxpayers of the village, including Mr. Penfield himself, presented a petition to the trustees, asking them to accept and declare the opening and extending of a street called "Mechanic Street" to the lands of the New York & New Haven Railroad, the same being 50 feet, lawful width, through the lands of George J. Penfield, who has opened the same at his own expense, and "now presents the village and town of New Rochelle for a public highway forever, free from any costs or expenses." The trustees discussed the petition, and the clerk was requested by the board to write to Mr. Penfield, requesting him to give a deed of the land to the village. The president of the trustees was also instructed by the board to see Mr. Penfield in regard to the deed. This he did, and, at a subsequent meeting, the required deed was presented to the trustees, and referred by the board to the president, in order that he might examine the same, and report thereon at the next regular meeting. This meeting was held on November 8, 1886, and Mr. Banks reported in favor of receiving the deed, which does not appear to have been recorded, however, until the 30th day of December, 1887. It will be observed that the petition refers to the highway opened by Mr. Penfield as extending a street called "Mechanic Street," and it seems probable that this expression occasioned the mistake which has given rise to the present litigation. Mechanic street enters Huguenot street from the south, on the side opposite Mr. Penfield's property. It does not enter at right angles, but diagonally. An extension of Mechanic street across Huguenot street, upon lines in the same direction as those of the sides of Mechanic street, would carry the extension across Mr. Penfield's land, for the most part, far to the east of the lines of the highway which he actually laid out, and which were visible at the time of the presentation of the petition to the village trustees. When the deed came to be drawn, however, the description inserted therein located the new highway along these diagonal lines, instead of locating it practically through the middle of Mr. Penfield's property, and nearly at right angles with Huguenot street. Precisely how the mistake was made is not disclosed. It is not improbable, however, that the draftsman of the deed inferred that the proposed extension of Mechanic street was to be along lines laid out in the same direction as the sides of that street, in-

stead of along those of a highway which had actually been constructed, and which, while it might with equal propriety be termed an extension of Mechanic street, nevertheless ran in a somewhat different direction. We think the evidence was ample to justify the conclusion of the learned trial judge that the insertion of this description was the result of a mutual mistake on the part of the grantor and the grantees. There can be no real doubt that what Mr. Penfield intended to convey was a highway 50 feet wide, as already marked out through the middle of his land. It is equally plain that it was this highway which the trustees of the village intended to accept and desired to have conveyed to them by means of the deed which they requested should be given. The deed itself does not appear have been read by any members of the board, except Mr. Banks, the president, who failed to observe the error in the description.

It is urged in behalf of the appellant that, in view of the rule which requires clear proof to establish a mutual mistake in a conveyance, all the trustees should have been called as witnesses, and that the testimony of Mr. Banks alone was not sufficient. Inasmuch, however, as it appears that he was the only trustee who really knew anything about the matter, and as his testimony tends strongly to establish the mistake, we think it was quite enough, in the absence of all proof to the contrary. Nor does the fact, if it be a fact, that Mr. Penfield and Mr. Banks read the description in the deed, affect the rights of the parties to the conveyance to have it reformed, if they mistakenly believed that the description corresponded with the actual boundaries of the land intended to be conveyed. Bush v. Hicks, 60 N. Y. 298.

A more serious question is presented in respect to the right of the plaintiffs to have the deed reformed so as to affect the New Rochelle Coal & Lumber Company, which has become the successor in interest to the defendant Canty. The mistake in the deed of the highway was not discovered until 1893. Several years previous, Mr. Penfield sold to Mr. Charles G. Banks a portion of his property, through which the Mechanic street extension ran, as the same was actually laid out. Mr. Banks thus acquired a lot on the northwesterly corner of Huguenot street and the Mechanic street extension, which he sold to the defendant Canty on January 26, 1893. The description in his conveyance to Mr. Canty shows that it related to the extension as it existed. Neither Mr. Banks, nor Mr. Canty, nor anybody else, seems to have suspected at that time that the extension, as described in Mr. Penfield's deed to the village, was in any respect different from the highway in use by the public. Mr. Banks testified, and the court at special term evidently believed, that he repeatedly had conversations with Mr. Canty in regard to the location of this Mechanic street extension in the course of the negotiations for the sale; that the street was clearly visible at the time; and that he showed Mr. Canty a diagram, which appears in the record, and upon which the Mechanic street extension, sold to the village by Mr. Penfield, is represented as running at right angles to Huguenot street, instead of diagonally from Huguenot street

to the railroad, as would have been the case if the lines erroneously inserted in Mr. Penfield's deed to the village had been copied. Some criticism is made by the appellant, upon this diagram, because, as matter of fact, the direction of the highway, even where Mr. Penfield claimed it belonged, was not exactly at right angles with Huguenot street; but we think this difference was too slight to be material. If Mr. Canty bought, as he appears to have done, with reference to the Banks' diagram, he knew perfectly well that he had not acquired any right to put his building where he subsequently placed it. At first he began to build with reference to the line of the existing street, but afterwards, having learned what was the description of the Mechanic street extension in Mr. Penfield's deed to the village, he altered his plans, and constructed part of his building with reference to the line of the highway, as indicated in that description. Mr. Banks testified that, very soon after he observed this change, he notified Mr. Canty that he was wrong, and must not build there, inasmuch as he had not bought there, to which he tells us Mr. Canty responded, "I know it, but they tell me I can claim it there." Thereupon, according to Mr. Banks' testimony, he told Mr. Canty that Mr. Penfield had sued the village to correct the error in the deed. Nevertheless, Mr. Canty continued and finished his building. It is true there is a direct and positive denial by Mr. Canty of the truth of these statements; but the trial judge has found against him on this issue, and we cannot say that the finding is without adequate evidence to support it.

It is argued that there was unreasonable delay in bringing the suit, and that equitable relief should have been denied on that ground. The action appears to have been commenced, however, very soon after the mistake was discovered; and no blame can be attached to Mr. Penfield for not discovering it earlier, because nothing had occurred with reference to the highway or the property in the vicinity to indicate that the description in his deed was erroneous. Such conveyances as had been made were all evidently based upon the location of the extension of Mechanic street along the lines upon which it had actually been opened, and just where he supposed the description in his deed would show it to be located. In cases of this kind, courts are liberal in granting relief, even where there has been a considerable lapse of time. Gillespie v. Moon, 2 Johns. Ch. 585–602; Andrews v. Gillespie, 47 N. Y. 487–491.

The only other point that requires consideration is the fact that, after Mr. Canty began to build, he was enjoined, and that the injunction was subsequently dissolved at special term by Mr. Justice Dykman. The record discloses very little about this injunction suit, but the learned trial judge, in his opinion, remarks that the application could not have been fully presented to him at the time, and that he could not then say that Mr. Canty was wrong. We are unable to say how this refusal to continue a provisional remedy can be regarded as in any respect a conclusive determination as to Mr. Canty's rights in the premises. If the case had proceeded to judgment, a very different question would be presented. Before the

deed from Mr. Penfield to the village was recorded, there was placed upon record a subsequent deed from Mr. Penfield to the New York, New Haven & Hartford Railroad Company of a portion of his property near the railroad line. This conveyance, being first in order of record, operated to deprive the village of a portion of the proposed highway. It was to protect its right to this property that the railroad corporation appeared in the litigation; but no claim to the premises embraced in its deed seems to have been seriously made upon the trial, nor has any been asserted upon this appeal.

The judgment should be affirmed, with costs. All concur.